

1  Harry Shulman, Esq. (State Bar No. 209908)
   *harry@millslawfirm.com*
2  THE MILLS LAW FIRM
3  145 Marina Boulevard
   San Rafael, California 94901
4  Telephone: (415) 455-1326
5  Facsimile: (415) 455-1327

6  Michael J. Freed (*pro hac vice* to be submitted)
   *mfreed@fklmlaw.com*
7  Steven A. Kanner *(pro hac vice* to be submitted)
   *skanner@fklmlaw.com*
8  William H. London
9  *wlondon@fklmlaw.com*
   Douglas A. Millen *(pro hac vice* to be submitted)
10 *dmillen@fklmlaw.com*
11 FREED KANNER LONDON & MILLEN LLC
   2201 Waukegan Road, Suite 130
12 Bannockburn, IL 60015
   Telephone: (224) 632-4500
13 Facsimile: (224) 632-4519

14

15 *Attorneys for Plaintiff Westell Technologies Inc.*

16

17                    **UNITED STATES DISTRICT COURT**
18                    **NORTHERN DISTRICT OF CALIFORNIA**

19

20

21 WESTELL TECHNOLOGIES INC., on behalf :
   of itself and all others similarly situated,     : Case No.
22                                                    :
23                                                    :
               Plaintiff,                             :
24        v.                                          :
                                                      : **CLASS ACTION COMPLAINT**
25                                                    :
26 SAMSUNG ELECTRONICS CO., LTD.;                     : **JURY TRIAL DEMANDED**
   SAMSUNG SEMICONDUCTOR, INC.;                       :
27 HYNIX SEMICONDUCTOR, INC.; HYNIX                   :
   SEMICONDUCTOR AMERICA, INC.;                       :
28 MICRON TECHNOLOGY, INC.; MICRON                    :

                                              **CLASS ACTION COMPLAINT**

1  SEMICONDUCTOR PRODUCTS, INC.;        :
   CRUCIAL TECHNOLOGY, INC.;            :
2  RENESAS TECHNOLOGY CORPORATION; :
3  RENESAS TECHNOLOGY AMERICA,          :
   INC.; TOSHIBA CORPORATION;           :
4  TOSHIBA AMERICA CORPORATION;         :
   TOSHIBA AMERICA ELECTRONIC           :
5  COMPONENTS, INC.; HITACHI, LTD.;     :
6  HITACHI AMERICA, LTD.; HITACHI       :
   ELECTRONIC DEVICES (USA), INC.;      :
7  MITSUBISHI ELECTRIC CORPORATION;     :
8  MITSUBISHI ELECTRIC &                :
   ELECTRONICS USA, INC.; MOSEL         :
9  VITELIC CORPORATION; MOSEL           :
   VITELIC CORPORATION (USA); SANDISK   :
10 CORPORATION; WINBOND ELECTRONICS:
11 CORPORATION; and WINBOND             :
   ELECTRONICS CORPORATION              :
12 AMERICA,                             :
                                        :
13              Defendants.             :

14

15         Plaintiff, by its undersigned attorneys, individually and on behalf of the class described

16 below, brings this class action against Defendants for damages under the antitrust laws of the

17 United States. Plaintiff is a direct purchaser and alleges that Defendants conspired to fix, raise,

18

19 maintain, and stabilize the price of Flash Memory sold in the United States during the relevant

20 time period defined below. As a result of Defendants' unlawful conduct, Plaintiff and members

21 of the proposed Class paid higher prices for Flash Memory than they would have paid in a

22 competitive market.

23

24                      **I.      OVERVIEW OF THE ACTION**

25         1.      Plaintiff brings this class action on behalf of all direct purchasers of Flash

26 Memory from Defendants or their subsidiaries, agents or co-conspirators during the period from

27 at least January 1, 1999 to the present (the "Class Period").

28

                                                              **CLASS ACTION COMPLAINT**

                                        2

2.      Flash memory is non-volatile computer memory that can be electrically erased and reprogrammed. It is a technology that is primarily used in memory cards, USB flash drives (thumb drives, handy drive, memory stick, flash stick, jump drive), which are used for general storage and transfer of data between computers and other digital products. As used herein, Flash Memory means all types of flash memory sold during the Class Period, including AND, NOT AND ("NAND") and NOT OR ("NOR") technologies. For purposes of this Complaint, Flash Memory excludes all types of static random access memory ("SRAM") or dynamic random access memory ("DRAM") sold during the Class Period.

3.      Defendants entered into an agreement to raise prices for Flash Memory, to maintain prices for Flash Memory, and to reduce production of Flash Memory. Defendants took steps in furtherance of this agreement, and took steps to insure compliance with the agreement by the various Defendants.

4.      During the Class Period, Defendants' collusive behavior inflated the price of Flash Memory. Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the class paid artificially inflated prices for Flash Memory. Plaintiff and all other members of the class who purchased Flash Memory during the Class Period have been damaged by Defendants' illegal acts.

5.      To remedy the harm caused by the agreement entered into and carried out by Defendants, this lawsuit is brought as a class action on behalf of all persons and entities who, during the Class Period, purchased Flash Memory in the United States directly from Defendants or any subsidiaries or affiliates thereof.

//

//

**CLASS ACTION COMPLAINT**

## II.    JURISDICTION AND VENUE

6.    Plaintiff brings this action to recover damages, including treble damages, injunctive relief, costs of suit and reasonable attorneys' fees caused by Defendants' violations of the Sherman Act, 15 U.S.C. § 1.

7.    The Court has jurisdiction over the subject matter of this action pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. § 15 and 26, and 28 U.S.C. § 1331 and 1337. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside in this District.

8.    By virtue of their nationwide contacts and activities, Defendants (as defined below) are subject to the jurisdiction of this Court. Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

## III.    PLAINTIFF

9.    Plaintiff **Westell, Technologies Inc.** is a Delaware corporation with its principal place of business at 750 N. Commons Drive, Aurora, Illinois. During the Class Period, Westell purchased Flash Memory directly from multiple Defendants.

## IV.    DEFENDANTS

10.    References made herein to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation.

11.     Defendant **Hitachi, Ltd.** is a business entity organized under the laws of Japan, with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo, Japan 100-8280. During the Class Period Defendant Hitachi, Ltd. sold and distributed Flash Memory to customers throughout the United States.

12.     Defendant **Hitachi America, Ltd.** is a wholly owned and controlled subsidiary of Defendant Hitachi, Ltd. with its principal place of business at 50 Prospect Avenue, Tarrytown, New York 10591. During the Class Period Defendant Hitachi America, Ltd. manufactured, sold and distributed Flash Memory to customers throughout the United States.

13.     Defendants **Hitachi, Ltd.** and **Hitachi America, Ltd.** are referred to collectively herein at "**Hitachi.**"

14.     Defendant **Hynix Semiconductor, Inc.** is a business entity organized under the laws of South Korea, with its principal place of business at San 136-1, Ami-ri, Bubal-eub, Icheon-si, Gyeonggi-do, Korea. During the Class Period Defendant Hynix Semiconductor, Inc. manufactured, sold and distributed Flash Memory to customers throughout the United States.

15.     Defendant **Hynix Semiconductor America, Inc.** is a wholly owned and controlled subsidiary of Defendant Hynix Semiconductor, Inc. with its principal place of business at 3101 North First Street, San Jose, California 95134. During the Class Period Defendant Hynix Semiconductor America, Inc. sold and distributed Flash Memory to customers throughout the United States.

16.     Defendants **Hynix Semiconductor, Inc.** and **Hynix Semiconductor America, Inc.** are referred to collectively herein as "**Hynix.**"

**CLASS ACTION COMPLAINT**

17.    Defendant **Micron Technology, Inc.** is a Delaware corporation, with its principal place of business at 8000 South Federal Way, Boise, Idaho 83716.  During the Class Period Micron Technology, Inc. manufactured, sold and distributed Flash Memory throughout the United States.

18.    Defendant **Micron Semiconductor Products, Inc.**, is a corporation formed under the laws of Delaware.  Micron Semiconductor Products, Inc., is a wholly owned and controlled subsidiary of Defendant Micron Technology, Inc., with its principal place of business at 8000 South Federal Way, Boise, Idaho, 83716.   During the Class Period Micron Semiconductor Products, Inc., sold and distributed Flash Memory throughout the United States.

19.    Defendant **Mitsubishi Electric Corporation** is a business entity organized under the laws of Japan, with its principal place of business at Tokyo Building, 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.  During the Class Period Mitsubishi Electric Corporation sold and distributed Flash Memory to customers throughout the United States.

20.    Defendant **Mitsubishi Electric & Electronics USA, Inc.** is a wholly owned and controlled subsidiary of Defendant Mitsubishi Electric Corporation, with its principal place of business at Americas Corporate Office, 5665 Plaza Drive, P.O. Box 6007, Cypress, CA 90630--0007.  It is a wholly owned subsidiary of Mitsubishi Electric Corporation.  During the Class Period Defendant Mitsubishi Electric & Electronics USA, Inc. sold and distributed Flash Memory to customers throughout the United States.

21.    Defendants **Mitsubishi Electric Corporation** and **Mitsubishi Electric & Electronics USA, Inc.** are referred to collectively herein as "**Mitsubishi**."

22.     Defendant **Mosel Vitelic, Inc.** ("**MVI**") is a business entity organized under the laws of Taiwan, with its principal place of business at No. 1 Creation Road, Hsinchu Science Park, Hsinchu, Taiwan, 30077. During the Class Period Defendant MVI sold and distributed Flash Memory to customers throughout the United States.

23.     Defendant **Mosel Vitelic Corporation** ("**MVC**") is a wholly owned and controlled subsidiary of Defendant MVI with its principal place of business at 3910 North First Street, San Jose, California 95134. During the Class Period Defendant MVC sold and distributed Flash Memory to customers throughout the United States.

24.     Defendants **MVI** and **MVC** are referred to collectively herein as "**Mosel Vitelic.**"

25.     Defendant **Crucial Technology, Inc.**, is a wholly owned subsidiary of Micron Technology, Inc., and maintains its principal place of business at 3475 Commercial Court, Meridian, Idaho.  Crucial Technology, Inc., operates the distribution business of Micron Technology, Inc.

26.     Defendant **Renesas Technology Corporation** is a business entity organized under the laws of Japan with its principal place of business at Nippon Bldg., 2-6-2, Ote-machi, Chiyoda-ku, Tokyo 100-0004, Japan.  Renesas Technology Corporation was established in April 2003 as a joint venture between Defendants Hitachi, Ltd. and Mitsubishi Electric Corp. During the Class Period Defendant Renesas Technology Corporation sold and distributed Flash Memory to customers throughout the United States.

27.     Defendant **Renesas Technology America, Inc.** is a wholly owned and controlled subsidiary of Renesas Technology Corporation with its principal place of business at

**CLASS ACTION COMPLAINT**

7

450 Holger Way, San Jose, California 95134. During the Class Period Defendant Renesas Technology America, Inc. sold and distributed Flash Memory to customers throughout the United States.

28.    Defendants **Renesas Technology Corporation** and **Renesas Technology America, Inc.** are referred to collectively herein as "**Renesas**."

29.    Defendant **Samsung Electronics Co. Ltd.** is a business entity organized under the laws of South Korea with its principal headquarters at 250, Taepyong-ro 2-ga, Jung-gu, Seoul 100-742, Korea. During the Class Period Defendant Samsung Electronics Company Ltd. sold and distributed Flash Memory to customers throughout the United States.

30.    Defendant **Samsung Semiconductor, Inc.** is a wholly owned and controlled subsidiary of Defendant Samsung Electronics Company Ltd. with its principal place of business at 3655 N. 1st St., San Jose, California 95134. During the Class Period Defendant Samsung Semiconductor, Inc. sold and distributed Flash Memory to customers throughout the United States.

31.    Defendants **Samsung Electronics Company Ltd.** and **Samsung Semiconductor, Inc.** are referred to collectively herein as "**Samsung**."

32.    Defendant **Toshiba Corporation** is a business entity organized under the laws of Japan, with its principal place of business at 1-1 Shibaura, 1-chome Minato-ku, Tokyo 105-8001, Japan. During the Class Period Defendant Toshiba Corporation sold and distributed Flash Memory to customers throughout the United States.

33.    Defendant **Toshiba America Corporation** is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the

Americas, Suite 4110, New York, New York 10020. During the Class Period Defendant Toshiba America, Inc. sold and distributed Flash Memory to customers throughout the United States.

34.      Defendant **Toshiba America Electronic Components, Inc.** is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place of business at 19900 MacArthur Boulevard, Suite 400, Irvine, California 92612. During the Class Period Defendant Toshiba America Electronics Components, Inc. sold and distributed Flash Memroy to customers throughout the United States.

35.      Defendants **Toshiba Corporation**, **Toshiba America, Inc.** and **Toshiba America Electronic Components, Inc.** are referred to collectively herein as "**Toshiba**."

36.      Defendant **Winbond Electronics Corporation** is a business entity organized under the laws of Taiwan with its principal place of business at No. 4 Creation Road 3, Science-Based Industrial Park, Hsinchu, 300, Taiwan. During the Class Period, Winbond Electronics Corporation sold and distributed Flash Memory to customers throughout the United States.

37.      Defendant **Winbond Electronics Corporation America** is incorporated in the State of Delaware with its principal place of business at 2727 North First Street, San Jose, California 95134. It is a wholly owned subsidiary of Winbond Electronics Corporation. During the Class Period, Winbond Electronics Corporation America sold and distributed Flash Memory to customers throughout the United States.

38.      Defendants **Winbond Electronics Corporation** and **Winbond Electronics Corporation America** are referred to collectively herein as "Winbond."

**CLASS ACTION COMPLAINT**

39.    Defendant **Sandisk Corporation** is incorporated in the State of Delaware with its principal place of business at 601 McCarthy Boulevard, Milpitas, CA 95035.  During the Class Period, Sandisk Corporation manufactured and sold Flash Memory to customers throughout the United States.

40.    Various other persons, firms and corporations, not named as Defendants herein, and presently unknown to Plaintiff, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy and/or in furtherance of the anticompetitive, unfair, or deceptive conduct.

## V.    CO-CONSPIRATORS

41.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegations means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## VI.    CLASS ACTION ALLEGATIONS

42.    Plaintiff bring this action on behalf of itself and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Class is defined as follows:

> All persons and entities who, from January 1, 1999 to the present, directly purchased Flash Memory in the United States from the defendants.  Excluded from this class are the defendants; their present and former parents, predecessors, successors, subsidiaries, employees, officers, and directors; their co-conspirators; any entity in which any defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any defendant.  Also excluded are any government entities, jurors

**CLASS ACTION COMPLAINT**

10

assigned to hear this action, any judicial officers presiding over this action, the members of their immediate families, and their judicial staff.

43.     Plaintiff does not know the exact size of the Class, and believes such information to be in the exclusive control of the Defendants. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the Class includes thousands of Flash Memory purchasers and is so numerous and geographically dispersed throughout the United States as to render joinder of all Class members impracticable.

44.     There are questions of law or fact common to the Class, including but not limited to the following:

a.     Whether Defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of Flash Memory sold in the United States;

b.     Whether Defendants' conduct caused the prices of Flash Memory sold in the United States to be at artificially high and noncompetitive levels;

c.     Whether Plaintiff and the other members of the Class were injured by Defendants' conduct, and, if so, the appropriate class-wide measure of damages for Class members;

d.     The duration of Defendants' agreement, contract, combination or conspiracy, and the nature and character of the acts done in furtherance of the agreement, contract, combination or conspiracy;

e.     Whether Defendants' conduct violates Section 1 of the Sherman Act, 15 U.S.C. § 1;

f.     Whether Defendants actively concealed the conspiracy from Plaintiff and other class members; and

**CLASS ACTION COMPLAINT**

g.    Whether Plaintiff and the Class are entitled to injunctive relief.

45.    These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

46.    Plaintiff's claims are typical of the claims of the Class because Plaintiff directly purchased Flash Memory from one or more of the Defendants.

47.    Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is a direct purchaser of Flash Memory and has no conflict with any other member of the Class. Furthermore, Plaintiff has retained competent counsel experienced in antitrust and class action litigation.

48.    The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications.

49.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

50.    This class action is superior to the alternatives, if any, for fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitious litigation.

## VII.    TRADE AND COMMERCE

51.    During the Class Period, each Defendant sold Flash Memory in the United States, in a continuous and uninterrupted flow of interstate commerce and foreign commerce.

52.    During the Class Period Defendants collectively controlled a significant share of the market for Flash Memory, both globally and in the United States.

**CLASS ACTION COMPLAINT**

53.     The business activities of the Defendants substantially affected interstate trade and commerce.

## VIII.   FACTUAL ALLEGATIONS

54.     Flash Memory is non-volatile computer memory that can be electrically erased and reprogrammed. It is a technology that is primarily used in memory cards, USB flash drives (thumb drives, handy drive, memory stick, flash stick, jump drive), which are used for general storage and transfer of data between computers and other digital products. It is a specific type of Electrically Erasable Programmable Read-Only Memory (EEPROM) that is erased and programmed in large blocks. Because of cost savings Flash Memory has become the dominant technology wherever a significant amount of non-volatile, solid-state storage is needed. Flash Memory has gained some popularity in the game console market, where it is often used instead of EEPROMs or battery-powered SRAM for saving game data.

55.     Because Flash Memory is non-volatile, it does not need power to maintain the information stored in the chip. Flash Memory also offers fast read access times (although not as fast as volatile DRAM memory used for main memory in PCs) and better kinetic shock resistance than hard disks. These characteristics explain the popularity of Flash Memory for applications such as storage on battery-powered devices. Another feature of Flash Memory is that when packaged in a "memory card," it is enormously durable, being able to withstand intense pressure, extremes of temperature and immersion in water.

56.     Flash Memory is a type of EEPROM (Electrically Erasable Programmable Read-Only Memory) chip. It has a grid of columns and rows with a cell that has two transistors at each intersection. The two transistors are separated from each other by a thin oxide layer. One of the transistors is known as a floating gate, and the other one is the control gate.

57.    NOR and NAND are flash memory chips constructed of either NOR or NAND logic gates. Electronic logic gates are a collection of transistors and resistors that implement Boolean logic operations in a circuit. Transistors make up logic gates. Logic gates make up circuits. Circuits make up electronic systems. NOR chips function like a computer's main memory, while NAND works like a hard disk. For example, in a digital camera, NOR flash memory contains the camera's internal software, while NAND flash memory is used to store the images.

58.    A logic gate is an elementary building block of a digital circuit. There are seven logic gates: AND, OR, XOR, NOT, NAND, NOR and XNOR. Most logic gates have two input terminals and one output terminal. Every terminal is in one of two binary conditions that is represented by different voltage.

59.    NOR and NAND flash memory were invented by Dr. Fujio Masuoka while working for Toshiba in 1984. According to Toshiba, the name "flash" was suggested by Dr. Masuoka's colleague, Mr. Shoji Ariizumi, because the erasure process of the memory contents reminded him of a flash of a camera. Dr. Masuoka presented the invention at the Institute of Electrical and Electronics Engineers' 1984 International Electron Devices Meeting held in San Francisco, California. Intel saw the massive potential of the invention and introduced the first commercial NOR type flash chip in 1988.

60.    Toshiba announced NAND flash at the International Solid-State Circuits Conference in 1989. NAND flash memory functions like a disk rather than memory. Flash Translation Layer software makes flash look like a disk drive to the operating system.

61.    AND is another standalone NAND-like chip. Hitachi and Mitsubishi manufactured, sold and distributed AND. Renesas also produces AND and AG-AND chips.

62. The market for the manufacture and sale of Flash Memory has a number of features that facilitated the implementation of the price-fixing conspiracy alleged in this Complaint. Specifically, Flash Memory is a homogenous product sold by Defendants and purchased by Plaintiffs and members of the class primarily on the basis of price. The Flash Memory market is highly concentrated with Defendants accounting for a vast majority of all Flash Memory sales in the United States. Moreover, the market for the manufacture and sale of Flash Memory is subject to high manufacturing and technological barriers to entry. Efficient manufacturing plants are large and costly, and Flash Memory is also subject to technological advances, requiring firms within the industry, and any potential entrants, to undertake significant research and development expenses.

63. Numerous industry trade organizations facilitate Defendants' Flash Memory cartel activities. Defendants are members of JEDEC Solid State Technology Association, a standard-setting organization. Hynix and Micron are among the founding members of the Open NAND Flash Interface ("ONFI") group, whose purpose is to meet and to discuss standards and production of NAND flash memory products. The ONFI group has discussed with Samsung having Samsung become a member.

64. The structure of the market also allowed Defendants to maintain and police their cartel-using methods such as price signaling. For example, on March 20, 2006, Hynix warned investors that the prices of NAND flash memory could fall as much as 50% for the year. The next day, Samsung announced its disagreement and said that prices would recover and stabilize. As of August 2006, Flash Memory prices stabilized, in part, as a result of reduced inventory from manufacturers. "Apple to spur NAND Flash Market, firm says," Electronic News, August 9, 2006.

**CLASS ACTION COMPLAINT**

15

65.    As a result of Defendants' conspiracy, prices for Flash Memory have been at supra-competitive levels from at least 1999 through the present. Before 1999, the average selling price for all Flash Memory was declining. In or around 2000, the aggregate average price of Flash Memory stabilized and increased.

66.    While average Flash Memory prices were declining, the cartel created by Defendants operated to mitigate those declines so that prices were still at supra-competitive levels. Defendants' collusive activity still continues and has had the effect of keeping prices at supra-competitive levels.

67.    The trend in the average prices of Flash Memory is similar to the then-contemporaneous price movement in the DRAM market. The Antitrust Division of the United States Department of Justice ("DOJ") is conducting a price-fixing investigation that centers around the pricing and behavior of companies in the DRAM market during the time period alleged here.    As part of related investigations, the DOJ is also conducting antitrust investigations revolving around SRAM and Flash Memory.

68.    Several Defendants targeted by the DOJ in its DRAM investigation have already paid substantial criminal fines and plead guilty to their involvement in the DRAM cartel.

69.    A number of Samsung and Hynix executives plead guilty and were fined and sentenced to prison for their involvement in the DRAM cartel.

70.    On June 18, 2002, Micron announced that it had been cooperating with the DOJ's DRAM investigation, pursuant to the DOJ's amnesty program.    As the amnesty applicant, Micron was immune from criminal fines for its participation in the DRAM conspiracy. On November 11, 2004, Micron's CEO, Steve Appleton, admitted that "the DOJ's

investigation has revealed evidence of price fixing by Micron employees and its competitors on DRAM sold to certain computer and server manufacturers."

71.    According to the antitrust complaint filed by the attorney generals from 34 states against Hynix, Micron, Mosel Vitelic and other DRAM manufacturers, *The State of California v. Infineon Tech. AG*, No. C 06 4333 (N.D. Cal. Jul. 14, 2006) ("AG Complaint"), at least 19 Micron employees exchanged price-related data in communication with, among others, employees of Samsung, Hynix, Mosel Vitelic, and Toshiba.

72.    Hynix played an early – and continuous – role in the DRAM conspiracy.  On May 11, 2005, Hynix Semiconductor, Inc., pled guilty to participating in a conspiracy to suppress and eliminate competition by fixing the prices of DRAM.  Hynix was fined $185 million.

73.    On November 30, 2005, Samsung Electronics Company and Samsung Semiconductor, Inc., pled guilty to participating in a conspiracy to suppress and eliminate competition by fixing the prices of DRAM.    Samsung was fined $300 million.

74.    In October 2006, the DOJ sent out subpoenas to a number of companies in connection with an investigation of cartel activity in the SRAM industry during the period from January 1, 1998 through December 31, 2005.    A DOJ spokesperson was quoted as saying: "[t]he U.S. Department of Justice's antitrust division is conducting an investigation regarding anti-competitive practices against chief SRAM manufacturers."    The following Defendants received subpoenas:  Hynix, Renesas, Hitachi, Toshiba, Mitsubishi, Micron, and Samsung.

75.    On December 1, 2006, after news of the DOJ's investigation of the SRAM industry surfaced *Network World* focused on the closeness of the DRAM and SRAM markets:

**CLASS ACTION COMPLAINT**

> While the DOJ hasn't said specifically what it is investigating [referring to graphics cards], one industry analyst speculated that the case could be about price fixing. The DOJ has already charged a number of chip companies in the DRAM memory chip market for price fixing, and is investigating several in the SRAM chip market. "If the DOJ wanted to, it could just go down every line in the semiconductor industry and find the same issue," said Gartner Inc. analyst Richard Gordon. "That's because there are a relatively few number of suppliers in the chip industry and an open flow of communication between competitors and customers, who may not define price fixing the same way the DOJ does," he said.

76.     On September 14, 2007, Defendant Sandisk disclosed that Sandisk and its Chief Executive Officer, Eli Harari, received grand jury subpoenas from the DOJ for possible antitrust violations in the Flash Memory market. Sandisk also disclosed in the same Securities and Exchange Commission filing that the Canadian Competition Bureau has begun an industry-wide investigation into anti-competitive activity in the Flash Memory market.

77.     In addition to Sandisk, Defendants Toshiba, Samsung and Renesas also disclosed that they had received subpoenas and cooperating with the DOJ's antitrust investigation into the Flash Memory market.

78.     The agents and employees of Samsung, Hynix and Micron implicated in the DRAM price-fixing conspiracy are the same agents and employees who are responsible for pricing SRAM and Flash Memory. Among those Samsung employees who pled guilty to criminal felonies in the DRAM investigation were the Vice President of Marketing for Memory Products, the Vice President of Sales with responsibility for U.S. memory pricing, and the Vice President of Marketing. Among those from Hynix who pled guilty to felony price-fixing violations were its Senior Vice President and General Manager of Worldwide Sales and Marketing, the Director of Global Strategic Accounts, and the Senior Manager and Vice President for Product Marketing – Vice President for Operations.

79.    Defendants, through their officers, directors and employees, conducted the conspiracy by, among other things:

    a.    agreeing to charge prices at specified levels and otherwise to increase and maintain prices of Flash Memory sold in the United States;

    b.    issuing price announcements and quotations in accordance with the agreements reached;

    c.    participating in meetings and conversations to discuss the prices of Flash Memory in the United States; and

    d.    selling Flash Memory to various customers in the United States at supra-competitive prices.

## IX.    FRAUDULENT CONCEALMENT

80.    Plaintiff and the class members did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this lawsuit was commenced.

81.    Defendants engaged in a successful, illegal price-fixing conspiracy that, by its nature, was inherently self-concealing.

82.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff and the class. Defendants and their co-conspirators conducted their conspiracy in secret and concealed the true nature of their unlawful conduct, and acts in furtherance thereof, through various means and methods to avoid detection, including, but not limited to, secret meetings, misrepresentations to customers concerning the reason for price increases, surreptitious

**CLASS ACTION COMPLAINT**

communications among defendants by telephone or in-person meetings at trade associations (and elsewhere) so that no written records would exist, and keeping the communications within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases.

83.    The affirmative actions of the Defendants herein alleged were wrongfully concealed and carried out in a manner that precluded detection.

84.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled and suspended with respect to any claims that Plaintiff and the class members have as a result of the unlawful agreements, contracts, conspiracies or combinations alleged in this Complaint.

## X.    CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1

85.    Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

86.    Beginning in at least January 1, 1999, the exact date being unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 by artificially reducing or eliminating competition in the United States.

87.    In particular, Defendants have combined and conspired to raise, fix, maintain or stabilize the prices of Flash Memory sold in the United States.

**CLASS ACTION COMPLAINT**

20

88.    As a result of Defendants' unlawful conduct, Flash Memory prices were raised, fixed, maintained and stabilized in the United States.

89.    The contract, combination or conspiracy among Defendants consisted of a continuing agreement, understanding and concerted action among Defendants and their co-conspirators.

90.    For purposes of formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators did those things they contracted, combined or conspired to do, including:

a.    agreeing to fix, raise, maintain, and stabilize the price of Flash Memory sold in the United States;

b.    exchanging information on prices and sales volumes of Flash Memory;

c.    allocating among themselves production of Flash Memory;

d.    agreeing to restrict output of Flash Memory;

e.    monitoring and implementing the arrangements among cartel members;

f.    allocating markets for Flash Memory among themselves; and

g.    selling Flash Memory at agree upon prices.

91.    The alleged agreements, contracts, combinations and conspiracies had the following effects, among others:

a.    price competition in the sale of Flash Memory has been restrained, suppressed and/or eliminated in the United States;

**CLASS ACTION COMPLAINT**

21

b.      prices for Flash Memory sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

c.      Plaintiff and members of the class paid more for Flash Memory than they would have paid in a competitive marketplace, unfettered by Defendants and their co-conspirators' collusive and unlawful conduct, and have been deprived of the benefits of free and open competition.

92.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the other members of the Class have been injured and will continue to be injured in their businesses and property in that they have paid more for Flash Memory than they otherwise would have paid in the absence of Defendants' unlawful conduct.

93.     Plaintiff and the class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## XI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment on its behalf and on behalf of the Class herein, adjudging and decreeing that:

A.      This action may proceed as a class action, with Plaintiff as the designated Class representative and its counsel as Class Counsel.

B.      Defendants have engaged in a contract, combination and conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and that Plaintiff and the members of the Class have been injured in their business and property as a result of Defendants' violations.

C.      Plaintiff and the members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff

**CLASS ACTION COMPLAINT**

22

1  and the Class be entered against the Defendants in an amount to be trebled in accordance with

2  such laws.

3
4          D.      Defendants, their subsidiaries, affiliates, successors, transferees, assignees and

5  the respective officers, directors, partners, agents and employees thereof and all other persons

6  acting or claiming to act on their behalf be permanently enjoined and restrained from

7  continuing and maintaining the combination, conspiracy or agreement alleged herein.

8          E.      Plaintiff and members of the Class be awarded pre-judgment and post-judgment
9
10 interest, and that such interest be awarded at the highest legal rate from and after the date of

11 service of the initial complaint in this action;

12         F.      Plaintiff and members of the Class recover their costs of this suit, including

13 reasonable attorneys' fees as provided by law; and

14         G.      Plaintiffs and members of the Class receive such other or further relief as may be
15
16 just and proper.

17

18 DATED: September 24, 2007                    THE MILLS LAW FIRM

19

20                                             By: _____
21                                                Harry Shulman
22

23                                             Harry Shulman, Esq. (State Bar No. 209908)
                                               *harry@millslawfirm.com*
24                                             145 Marina Boulevard
25                                             San Rafael, California 94901
                                               Telephone: (415) 455-1326
26                                             Facsimile: (415) 455-1327

27                                             Michael J. Freed (*pro hac vice* to be submitted)
28                                             *mfreed@fklmlaw.com*

                                                              **CLASS ACTION COMPLAINT**
                                               23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steven A. Kanner (*pro hac vice* to be submitted)
*skanner@fklmlaw.com*
William H. London
*wlondon@fklmlaw.com*
Douglas A. Millen (*pro hac vice* to be submitted)
*dmillen@fklmlaw.com*
**FREED KANNER LONDON &
MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521

**CLASS ACTION COMPLAINT**

24

1

**JURY TRIAL DEMANDED**

2

3
     Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims

4
asserted in this Complaint so triable.

5
DATED: September 24, 2007              THE MILLS LAW FIRM

6

7
                                       By: _____

8
                                          Harry Shulman

9

10
                                       Harry Shulman, Esq. (State Bar No. 209908)
                                       *harry@millslawfirm.com*
11
                                       145 Marina Boulevard
12                                     San Rafael, California 94901
                                       Telephone: (415) 455-1326
13                                     Facsimile: (415) 455-1327

14
                                       Michael J. Freed (*pro hac vice* to be submitted)
15                                     *mfreed@fklmlaw.com*
                                       Steven A. Kanner (*pro hac vice* to be submitted)
16                                     *skanner@fklmlaw.com*
                                       William H. London
17                                     *wlondon@fklmlaw.com*
                                       Douglas A. Millen (*pro hac vice* to be submitted)
18                                     *dmillen@fklmlaw.com*
19                                     **FREED KANNER LONDON &**
                                       **MILLEN LLC**
20                                     2201 Waukegan Road, Suite 130
                                       Bannockburn, IL 60015
21                                     Telephone: (224) 632-4500
                                       Facsimile: (224) 632-4521
22

23

24

25

26

27

28

                                                          **CLASS ACTION COMPLAINT**

                                  25