Harry Shulman, Esq.  (State Bar No. 209908)
*harry@millslawfirm.com*
THE MILLS LAW FIRM
145 Marina Boulevard
San Rafael, California 94901
Telephone:  (415) 455-1326
Facsimile:  (415) 455-1327

Michael J. Freed (*pro hac vice* submitted)
*mfreed@fklmlaw.com*
Steven A. Kanner (*pro hac vice* submitted)
*skanner@fklmlaw.com*
William H. London
*wlondon@fklmlaw.com*
Douglas A. Millen (*pro hac vice* submitted)
*dmillen@fklmlaw.com*
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone:  (224) 632-4500
Facsimile:  (224) 632-4521

***Counsel for Plaintiff Westell Technologies, Inc.***

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

|  |  |
|---|---|
| _____ | Case No. C-07-4944-BZ |
| ) | |
| WESTELL TECHNOLOGIES, INC., on ) | **NOTICE OF MOTION AND** |
| behalf of itself and all others similarly ) | **MOTION TO APPOINT INTERIM** |
| situated, ) | **LEAD CLASS COUNSEL FOR** |
| ) | **DIRECT PURCHASER PLAINTIFFS** |
| Plaintiff, ) | **(FRCP Rule 23(g))** |
| ) | Date:  October 30, 2007 |
| v. ) | Time:  1:00 p.m. |
| Samsung Electronics Co., Ltd., et al., ) | Courtroom:  3, Third Floor |
| ) | |
| Defendants. ) | **The Honorable Bernard Zimmerman** |
| _____ | |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION..................................................................................... 1

I. INTRODUCTION ............................................................................................................. 2

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 3

III. FKLM IS WELL-QUALIFIED TO SERVE AS
INTERIM CO-LEAD COUNSEL .................................................................................. 4

   A.   The Court Should Appoint Interim Co-Lead Counsel To
       Achieve Efficiency and Economy ............................................................................. 6

      1.   FKLM's leadership role in *DRAM* will significantly help it
          identify and investigate potential claims in this action. ................................... 7

      2.   FKLM attorneys have extensive, unassailable experience
          litigating antitrust class actions. ...................................................................... 7

         a.   Michael J. Freed............................................................................... 8

         b.   Steven A. Kanner.............................................................................. 8

         c.   William H. London............................................................................ 9

         d.   Douglas A. Millen............................................................................ 9

      3.   FKLM will commit the necessary resources to represent the class.................... 9

   B.   FKLM's Commitment To Cooperation Makes
       It An Ideal Interim Lead Counsel ........................................................................... 10

   C.   Other Factors Demonstrate FKLM's Ability To Fairly And Adequately
       Represent The Class ................................................................................................. 10

IV. CONCLUSION .............................................................................................................. 11

## TABLE OF AUTHORITIES

### Cases

*Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64 (M.D. Tenn. 2004 .......................... 6

*Hill v. The Tribune Co.*, No. 05 C 2602 *et al.*, 2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) ........... 6

*In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552 (S.D. Ohio 2005) .................................. 6

*Parkinson v. Hyundai Motor Am.*, No. CV06-345AHS (MLGX) *et al.*, 2006 WL 2289801
    (C.D. Cal. Aug. 7, 2006) .......................................................................................................... 6

### Other Authorities

*Manual for Complex Litigation, Fourth* § 10.224 (2006) ............................................................ 10

*Third Circuit Task Force Report: Selection of Class Counsel*, 208 F.R.D. 340 (2002) ................. 10

Advisory Committee Notes (2003 Amendments)................................................... 6, 7, 10

### Rules

Federal Rule of Civil Procedure 1................................................................................ 1

Federal Rule of Civil Procedure 23(g) ........................................................................1, 2, 4, 6-7

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 30, 2007 at 1:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Saundra B. Armstrong of the United States District Court, Northern District of California, 130 Clay Street, Courtroom 3, Oakland, California, 94612, Freed Kanner London & Millen LLC will and hereby does move the Court for an order, if the Court decides to appoint more than two interim co-lead counsel, appointing it as one of the interim co-lead class counsel for the putative direct purchaser class along with Saveri & Saveri, Inc. and Pearson, Simon, Soter, Warshaw & Penny, LLP.

This motion is brought pursuant to Rule 1 and Rule 23(g) of the Federal Rules of Civil Procedure. The grounds for this motion are that this complex case will benefit from the appointment of three interim class counsel and that the undersigned proposed lead counsel is well qualified for the position because of its extensive experience in antitrust class action litigation. This motion is based on this notice of motion, the supporting memorandum of points and authorities that follows, the declaration of Steven A. Kanner, exhibits, the argument of counsel, and all papers and records on file in this matter.

# I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(g), Freed Kanner London & Millen LLC ("FKLM")[1] seeks appointment as interim, lead counsel on behalf of the direct purchaser class in these related antitrust class actions. FKLM is aware that Saveri & Saveri, Inc. ("Saveri") and Pearson, Simon, Soter, Warshaw & Penny, LLP ("Pearson Simon") filed a joint Motion to Appoint Interim Lead Class Counsel For Direct Purchaser Plaintiffs ("Joint Motion"), requesting the Court appoint those two firms interim co-lead counsel. Saveri and Pearson Simon are well-qualified to serve as interim co-lead counsel. FKLM is similarly qualified to be interim, lead counsel; and therefore, if the Court decides to appoint additional interim co-lead counsel, FKLM seeks appointment from the Court to be named lead counsel in this action along with Saveri and Pearson Simon.

*First,* FKLM filed one of the six known complaints that were filed on behalf of direct purchasers of Flash Memory. FKLM filed on behalf of Westell Technologies, Inc., a publicly held corporation that purchased significant volumes of Flash Memory from multiple defendants during the class period.

*Second,* FKLM's antitrust experience is unassailable. FKLM name partner Michael J. Freed is a pioneer in the class action arena, having litigated antitrust, securities and other complex cases on behalf of plaintiffs for 35 years. *See infra;* Kanner Decl. ¶ 5. Additionally, for over 20 years, FKLM name partner Steven A. Kanner has been prosecuting antitrust class action cases and has held co-lead counsel positions in many of those cases. *See infra; id.* at ¶ 4. Moreover,

---

[1] On January 1, 2007, Freed Kanner London & Millen began operations. Previously, all of the members of FKLM practiced antitrust law at Much Shelist Freed Denenberg Ament & Rubenstein P.C. ("Much Shelist Freed"), where they propelled Much Shelist Freed to a top-tier plaintiffs' antitrust law firm, helping plaintiffs recover *billions* of dollars over more than a 30-year period. *See* Declaration of Steven A. Kanner ("Kanner Decl.") ¶¶ 1-2, Ex. A thereto. For ease of reference and consistency, all activities undertaken by FKLM attorneys who at the time were members of Much Shelist Freed will be ascribed to FKLM.

FKLM, located in the Chicago area – and the only firm located outside San Francisco to have filed a Rule 23(g) motion – is uniquely positioned to provide geographical scope for the proposed *nationwide* class.

*Third*, FKLM is well-versed in the intricacies of the memory chip industry, having held a leadership position in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* FKLM, along with Bruce Simon (of Pearson Simon), was a co-chair of discovery in *DRAM, see* Joint Motion at 9 n.3, and worked closely with Saveri and Pearson Simon. FKLM attorneys, like Saveri and Pearson Simon attorneys, played a substantial role in the case's successful outcome, working thousands of hours analyzing the defendants' documents, negotiating with defense counsel, taking depositions in the United States and abroad and drafting motions and pleadings.

Consequently, if the Court decides to appoint interim co-lead counsel in addition to Saveri and Pearson Simon, FKLM seeks appointment from the Court to be named lead counsel in this action.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

These related class actions arise from Defendants' alleged price fixing in the Flash Memory market. Flash Memory is non-volatile computer memory that can be electrically erased and reprogrammed. It is a technology that is primarily used in memory cards, USB flash drives (thumb drives, handy drive, memory stick, flash stick, jump drive), which are used for general storage and transfer of data between computers and other digital products.

In September 2007, the Antitrust Division of the United States Department of Justice ("DOJ") sent subpoenas to several companies in connection with an investigation of cartel activity in the Flash Memory industry. A DOJ spokesperson was quoted as saying: "[t]he Antitrust Division is investigating the possibility of anti-competitive practices in the flash memory industry."

As of this filing, six direct purchaser class action complaints have been filed:

- *A Computer Place v. Samsung Electronics Co., Ltd., et al.*, No. C-07-1020-SBA;

- *Brian Levy v. Samsung Electronics Co., Ltd., et al.*, No. C-07-4252-MMC (originally filed in the United States District Court for the Southern District of New York before being transferred to this District);

- *Kevin's Computer & Photo v. Samsung Electronics Co., Ltd., et al.*, No. C-07-1665-SBA;

- *Laura Young v. Samsung Electronics Co., Ltd., et al.*, No. C-07-2286-SBA;

- *Richard Thal v. Hitachi America, Ltd.,* No. C-07-4785-BZ; and

- *Westell Technologies, Inc. v. Samsung Electronics Co., Ltd., et al.*, No. 07-4944-BZ.

*See* Kanner Decl. ¶¶ 7-13.

### III.    FKLM IS WELL-QUALIFIED TO SERVE AS INTERIM CO-LEAD COUNSEL

The members of FKLM have extensive experience in complex, antitrust class action litigation.  Rule 23(g)(2)(B) of the Federal Rules of Civil Procedure requires the Court to appoint interim class counsel "best able to represent the interests of the class."  Based on its attorneys' proven skill, experience and leadership, FKLM, which represents the only publicly held direct purchaser plaintiff, *is* that counsel.

FKLM attorneys have been co-lead counsel in some of the nation's largest *antitrust* class actions, cumulatively resulting in **billions of dollars** of recoveries for damaged plaintiff classes. FKLM founding partner Michael J. Freed was co-lead counsel in *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.), an antitrust case that yielded approximately $715 million in settlements, and *In re High Fructose Corn Syrup Antitrust Litigation*, MDL 1087 (N.D. Ill.), an antitrust case that resulted in settlements of $531 million.  In the *High Fructose* case, the court on several occasions took time to compliment the attorneys involved, noting the "quality and

1  professionalism" of the lawyers.  At the close of the hearing where counsel fees were approved,

2  Judge Michael M. Mihm stated:

3      I've said many times during this litigation that you and the attorneys who represent
       the defendants here are as good as it gets.  Very professional.  At least in my
4      presence or in my contacts with you, you've always been civil.  You've always
       been cutting to the chase and not wasting my time or each other's time or adding to
5      the cost of the litigation.

6  October 14, 2005 Tr. 45:10-16, attached hereto as Ex. 1.

7      FKLM founding partner Steven A. Kanner has been prosecuting antitrust class actions on

8  behalf of plaintiff classes for more than 20 years.  In that time, Mr. Kanner has proven himself an

9  accomplished litigator and leader.  Most recently, Mr. Kanner has been appointed co-lead counsel

10 in: *In re Methyl Methacrylate (MMA) Antitrust Litigation*, MDL 1768 (E.D. Pa.); *In re Hydrogen

11 Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.); *In re Cotton Yarn Antitrust Litigation*, MDL

12 1622 (M.D.N.C.); and *In re Urethane Chemicals Antitrust Litigation*, MDL 1616 (D. Kan.).

13     Additionally, in *In re Static Random Access Memory (SRAM) Antitrust Litigation* (N.D.

14 Cal., MDL No. 1819), the Honorable Claudia Wilken appointed FKLM as a member of the

15 plaintiffs' executive committee on behalf of a nationwide class of direct purchasers of SRAM.

16     Recently, *Chambers and Partner*, considered the legal profession's foremost authority on

17 industry, firm and attorney intelligence, ranked FKLM among Illinois's finest, ahead of many of

18 the State's most well known and established firms:

19     This boutique firm is the new face of Much Shelist's much-feared
       antitrust team.  Everything that made Much Shelist the force it was
20     in the antitrust arena – personnel, clients and vision – has been
       retained during the transition; the team, led by the redoubtable
21     Mike Freed, is set to maintain its reputation as a leader on the
       plaintiff side – doing "*much of the best class action work.*"  Setting
22     up shop in the suburbs of Chicago, the team has released itself
       from the restraints imposed by conflicts arising from Much
23     Shelist's developing corporate department, and is now free to forge
       its own path through the Illinois antitrust market.

24 *See* Kanner Decl. ¶ 3.

**A. The Court Should Appoint Interim Co-Lead Counsel To Achieve Efficiency and Economy**

Rule 23(g) was added to the Federal Rules of Civil Procedure in 2003. *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003 Amendments). Rule 23(g)(1) provides for the appointment of class counsel at the time a class is certified, and Rule 23(g)(2)(A) provides for the appointment of interim counsel on behalf of a putative class. Courts interpreting Rule 23(g) have followed the Advisory Committee Notes relating thereto and found that "the primary responsibility of the class counsel, resulting from appointment as such, is to represent the best interests of the class." *Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004). *See also In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 554 (S.D. Ohio 2005).

While neither Rule 23(g) nor the Advisory Committee Notes explicitly state the standards courts are to apply when selecting interim class counsel, court have applied the Rule 23(g)(1)(C) factors. *See Parkinson v. Hyundai Motor Am.*, No. CV06-345AHS (MLGX) *et al.*, 2006 WL 2289801, at *2 (C.D. Cal. Aug. 7, 2006) ("Rule 23(g) provides criteria to consider when appointing class counsel, without distinguishing interim counsel. Presumably, the same factors apply, however."); *Hill v. The Tribune Co.*, No. 05 C 2602 *et al.*, 2005 WL 3299144, at *3 (N.D. Ill. Oct. 13, 2005) ("Rule 23(g) provides criteria to consider when appointing class counsel. No distinction is made regarding appointing interim counsel.").

Rule 23(g) includes express factors for the court to consider and any other matter the court deems relevant:

> (B) An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.
> (C) In appointing class counsel, the court
>      (i) must consider:
>          • the work counsel has done in identifying or investigating potential claims in the action,
>          • counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
>          • counsel's knowledge of the applicable law, and

- the resources counsel will commit to representing the class;
  (ii) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

Fed.R.Civ.P. 23(g)(1)(B)-(C). The Advisory Committee Notes do counsel that when evaluating prospective class counsel "[n]o single factor should necessarily be determinative in a given case."

### 1.  FKLM's leadership role in *DRAM* will significantly help it identify and investigate potential claims in this action.

In *DRAM* (*see supra*) FKLM was co-chair of discovery. FKLM attorneys worked thousands of hours analyzing defendants' documents and the memory chip industry, negotiating with defense counsel, taking depositions in the United States and abroad and drafting motions and pleadings.

As pointed out in the Joint Motion, the issues in this action are similar to those in the *DRAM* action. *See* Joint Motion at 15-16. Many of the manufacturer-defendants in *DRAM* are named defendants here. Because of FKLM's attorneys' extensive experience litigating *DRAM*, FKLM – and its attorneys – are supremely qualified to identify and investigate potential claims in this action.

### 2.  FKLM attorneys have extensive, unassailable experience litigating antitrust class actions.

FKLM attorneys are among the most experienced attorneys in the country in the prosecution of complex antitrust class actions, having been appointed and served as co-lead counsel in some of the hardest-fought, most successful (in dollar amount) antitrust class actions. Members of FKLM have been co-lead counsel and held key leadership positions in numerous cases, a representative sample of which are detailed here:

- *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.) – FKLM attorneys were co-lead counsel. Settlements totaling approximately $715 million were recovered on behalf of the plaintiff class.

- *In re The Prudential Insurance Company of America Sales Practice Litigation*, MDL 1061 (D.N.J.) – FKLM attorneys were co-lead counsel. The case resulted in a settlement of over $410 million for the class.

- *In re High Fructose Corn Syrup Antitrust Litigation*, MDL 1087 (N.D. Ill.) – FKLM attorneys were co-lead counsel. The case was settled for $531 million for the class.

- *In re Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.) – FKLM attorneys were co-chairs of discovery. The action resulted in over $1.3 billion in settlements.

- *In re Rubber Chemicals Antitrust Litigation*, MDL 1648 (N.D. Cal.) – FKLM attorneys served on the Executive Committee. The case resulted in settlements of over $300 million for class members.

The FKLM attorneys who will be working on this case include:

### a.    Michael J. Freed

Mr. Freed is a 1962 graduate of the University of Chicago Law School, and a former trial and appellate attorney with the United States Department of Justice, Antitrust Division (Honors Program). He has been in private practice for over 30 years and served as co-lead counsel in many prominent antitrust cases, including *In re Brand Name Prescription Drugs Antitrust Litigation* and *In re High Fructose Corn Syrup Antitrust Litigation. See supra.* Mr. Freed has served as co-lead counsel in cases that have recovered over $2 billion. Mr. Freed has been named an Illinois Super Lawyer by *Chicago Magazine*, an Illinois Leading Lawyer by the Leading Lawyer's Network, and one of the top plaintiffs' antitrust lawyers in Illinois by *Chamber's International*. In addition, Mr. Freed was recently honored by the Chicago Appleseed Fund for Justice for his exceptional *pro bono* efforts.

### b.    Steven A. Kanner

Mr. Kanner has over 20 years of antitrust, class action experience. His experience includes investigation, discovery, trial and appeal of antitrust, securities and other complex cases. With respect to antitrust matters, Mr. Kanner has also been involved in a leadership capacity in many of the cases described above. Cases in which Mr. Kanner is currently serving as co-lead counsel or interim co-lead counsel include: *In re Methyl Methacrylate (MMA) Antitrust Litigation*, MDL 1768 (E.D. Pa.); *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.); *In re Cotton*

*Yarn Antitrust Litigation*, MDL 1622 (M.D.N.C.); and *In re Urethane Chemicals Antitrust Litigation*, MDL 1616 (D. Kan.).

### c.    William H. London

Mr. London has over 15 years of experience litigating class action cases. Mr. London recently served as trial counsel for the plaintiff class in *In re High Pressure Laminates Antitrust Litig.*, a case that was tried before a jury in the Southern District of New York. Mr. London is also actively involved in several cases in which FKLM is acting as co-lead counsel, including *In re Methyl Methacrylate (MMA) Antitrust Litigation*, MDL 1768 (E.D. Pa.) and *In re Hydrogen Peroxide Antitrust Litigation*, MDL 1682 (E.D. Pa.). Mr. London worked extensively on *DRAM* and took the depositions of one of the defendant manufacturer's highest ranking officials. Mr. London is a former Illinois Assistant Attorney General, during which time he argued cases in the United States Court of Appeals for the Seventh Circuit and the Illinois Supreme Court.

### d.    Douglas A. Millen

Mr. Millen has over 12 years of experience representing plaintiffs in antitrust class action cases. Mr. Millen has extensive experience in electronic discovery matters and the integration of technology into all aspects of complex litigation. In *DRAM* Mr. Millen resolved numerous complicated and intricate electronic discovery issues; designed the model and parameters used to analyze the millions of pages of documents defendants produced, which resulted in a core set of documents relied upon to prosecute successfully the case; and he was responsible for taking depositions in the United States and Taiwan. Mr. Millen has also worked substantially on many of the largest antitrust cases in recent history, including *In re Vitamins Antitrust Litigation,* MDL 1285 (D.D.C.), and *In re Rubber Chemicals Antitrust Litigation*, MDL 1648 (N.D. Cal.).

### 3.    FKLM will commit the necessary resources to represent the class.

FKLM has extensive experience prosecuting complex class actions, focusing mainly on antitrust violations. The firm is dedicated to investing all necessary resources to ensure that the

class receives the highest level of representation.  As an example, in *DRAM*, FKLM attorneys –

the same attorneys who will litigate this case – expended thousands of hours litigating the case, at

times traveling half-way around the world to take depositions.  Moreover, in other cases, FKLM

attorneys have made substantial commitments and devoted the necessary hours working to

achieve the stellar results that have made it a top-tier, class action firm.  FKLM has the financial

resources and the attorney resources to ensure that the class receives the highest possible level of

representation.

### B.  FKLM's Commitment To Cooperation Makes It An Ideal Interim Lead Counsel

It is widely recognized that interim class counsel will be acting on behalf of other attorneys

and those other attorneys' clients in the role of lead counsel.  Thus, other considerations come into

play, including the attorneys' ability to command the respect of their colleagues and work

cooperatively with opposing counsel and the court.  *Manual for Complex Litigation, Fourth* §

10.224 at 39-40 (2006).  FKLM has worked cooperatively with all counsel, making FKLM an

ideal lead counsel.

### C.  Other Factors Demonstrate FKLM's Ability To Fairly And Adequately Represent The Class

In its report on the selection of class counsel, the Third Circuit Task Force identified a

number of other selection criteria that courts have cited to in other cases.  Two of the more notable

factors were:

- Does counsel's client have the ability and motivation to supervise and monitor counsel's work for the class?
- Does counsel represent a plaintiff with a significant economic stake in the litigation in comparison with other contestants?

*Third Circuit Task Force Report: Selection of Class Counsel*, 208 F.R.D. 340, 419 (2002).  *See*

*also* Fed.R.Civ.P. 23(g)(2)(B) (Advisory Committee Notes) ("Depending on the nature of the

case, one important consideration might be the applicant's existing attorney-client relationship

with the proposed class representative").

Westell, a publicly traded corporation, is large enough to monitor counsel's work for the

class.  *See* Kanner Decl. ¶ 14.  Westell, which trades on the NASDAQ under the ticker symbol

WSTL, had 2006 fiscal year revenues in excess of $283 million and *purchased thousands of Flash*

---

*Memory products from multiple Defendants during the class period. Id.* Accordingly, these factors militate toward FKLM's appointment as co-lead counsel.

## IV.  CONCLUSION

For the foregoing reasons, Freed Kanner London & Millen respectfully requests that the Court appoint Saveri & Saveri, Inc., and Pearson, Simon, Soter, Warshaw & Penny, LLP, as interim co-lead counsel for the direct purchaser actions.  If, however, the Court decides to appoint additional interim co-lead counsel, Freed Kanner London & Millen seek appointment from the Court to be named lead counsel in this action along with Saveri & Saveri, Inc., and Pearson, Simon, Soter, Warshaw & Penny, LLP.

DATED: September 26, 2007          THE MILLS LAW FIRM

                                   By:   /s/ Harry Shulman
                                         Harry Shulman

                                   FREED KANNER LONDON & MILLEN LLC

                                   By:   /s/ Steven A. Kanner
                                         Steven A. Kanner

# EXHIBIT 1

1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

2

3

4

IN RE:  HIGH FRUCTOSE CORN SYRUP      )
5           ANTITRUST LITIGATION           )
                                           )  MDL No. 187
6                                          )  Master File 95-1477
        THIS DOCUMENT RELATES TO:         )
7       ALL ACTIONS                        )

8

9

10

TRANSCRIPT OF PROCEEDINGS

11

12

13

OCTOBER 4, 2004
14              Peoria, Illinois

15

16

BEFORE:

17

HONORABLE MICHAEL M. MIHM
18          United States District Judge

19

20

21

22

23              Karen S. Hanna, C.S.R.
            U.S. District Court Reporter
24           Central District of Illinois
Proceedings recorded by mechanical stenography; transcript
25  produced by computer

1                              APPEARANCES:

2

3                  ON BEHALF OF THE PLAINTIFFS:

4

5                        MICHAEL J. FREED, ESQ.
         Much, Shelist, Freed, Denenberg, Ament & Rubenstein
6                 200 N. LaSalle Street, Suite 2100
                     Chicago, Illinois   60601-1095
7

8                      ROBERT N. KAPLAN, ESQ.
                       GREGORY ARENSON, ESQ.
9                   Kaplan, Fox & Kilsheimer
                          805 Third Avenue
10               New York, New York   10017

11

12              H. LADDIE MONTAGUE, JR., ESQ.
                     CHARLES GOODWIN, ESQ.
13                     Berger & Montague
                       1622 Locust Street
                 Philadelphia, Pennsylvania   19103
14
                             -- and --
15

16                     M. MICHAEL WATERS, ESQ.
                   456 Fulton Street, Suite 425
17                     Peoria, Illinois   61602

18

19

20                 ON BEHALF OF THE DEFENDANTS:

21                     TERRENCE A. GRIMM, ESQ.
                       JOSEPH A. SPIEGLER, ESQ.
22                        Winston & Strawn
                          35 W. Wacker Drive
23                     Chicago, Illinois   60601
           (Appeared on Behalf of A.E. Staley Manufacturing Co.)
24

25

1    THE COURT:  Welcome back one last time.

2    MR. ARENSON:  We're glad to be here, Your Honor.

3    THE COURT:  The matter is set today for multiple

4 reasons.  The first matter that I want to address is the

5 fairness hearing.  The Court previously provided

6 preliminary approval for the settlement on July 28 and

7 approved form of notice that was sent to the class by

8 mailing and publication.  Do plaintiffs' counsel have a

9 presentation to make on the fairness portion?

10    MR. FREED:  We do, Your Honor.  Good morning,

11 Your Honor.  Michael Freed for the plaintiffs.  As Your

12 Honor knows, the Seventh Circuit has issued an opinion

13 which requires the Court to consider five factors in

14 making a determination on whether to grant final approval

15 to a settlement.  Because of that, while I think the Court

16 is exceptionally well versed about our case and where the

17 case stood at the point of the settlement and where the

18 settlement fit in the scheme of things, I will address

19 each of the five points so that we have a complete record.

20    THE COURT:  Thank you.

21    MR. FREED:  The first point under Rule

22 23(e)(1)(C) is the strength of our case compared to the

23 amount of the defendant's settlement offer.  In this

24 regard, I would make several observations.

25    First, the settlement took place over a very,

1    THE COURT:  I have no intention of considering

2    his separately.  So we'll be in recess for ten minutes.

3                    (Recess taken)

4    THE COURT:  I think perhaps the percentage of

5    fees that you were entitled to probably went up some this

6    morning based on our conversation.  I'm not going to keep

7    you in suspense.  I am going to approve the 25 percent,

8    but I think you can gather from my comments I'm very

9    unhappy about this.  And this has nothing to do with you.

10   I've said many times during this litigation that you and

11   the attorneys who represented the defendants here are as

12   good as it gets.  Very professional.  At least in my

13   presence or in my contacts with you, you've always been

14   civil.  You've always been cutting to the chase and not

15   wasting my time or each other's time or adding to the cost

16   of the litigation.

17   And this was very difficult litigation.  You

18   know, I think it's unfortunate that the Seventh Circuit

19   has so casually dismissed the factors that are discussed

20   in the Cendant case because those factors are all very

21   much in your ballpark and they support a very high request

22   for fees.  I just want to take a minute here and go

23   through a few things.

24   First of all, the size of the fund created, the

25   number of persons benefitted.  The fund is very large.